## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN WILKINSON,       :       CIVIL NO. 3:10-CV- 1436
                         :
       Petitioner,      :
                         :
       v.              :
                         :       **(Magistrate Judge Carlson)**
PENNSYLVANIA BOARD OF   :
PROBATION AND PAROLE,   :
                         :
       Respondents,   :

## MEMORANDUM OPINION

### I.    Introduction

The Petitioner in this case, Steven Wilkinson, is a state parolee, and a criminal recidivist who violated his state parole on a rape charge by committing a gun-point sexual assault while on parole supervision. Wilkinson, who is proceeding *pro se*, has filed a petition for writ of habeas corpus which contends that the Parole Board's decision to extend his parole release date, and to refuse to credit him for the time served on his new criminal offenses, violates his constitutional rights. That Parole Board action, which Wilkinson attacks in this petition, is specifically authorized by state law, which expressly provides that parolees who violate the terms of their parole

1

by committing new crimes on parole may not have their parole violation sentences run concurrently with the penalties imposed upon them for those new crimes.

For the reasons set forth below, we will deny this petition, since Wilkinson has not exhausted his state remedies and Wilkinson is not entitled to use a writ of habeas corpus to compel state parole officials to deviate from the parole outcome mandated by state law, and by his own repeated misconduct.

## II.    <u>Statement of Facts and of the Case</u>

The history of criminal conduct, parole violations, arrests, and imprisonment which has marked Steven Wilkinson's life began more than 20 years ago, in 1983, when Wilkinson was convicted in the Court of Common pleas of York County of rape and involuntary deviate sexual intercourse. (Doc. 15, Ex.1.) Wilkinson was sentenced to a term of 7 ½ - to-15 years imprisonment for his role in this violent sexual assault. (<u>Id</u>.) Consequently, the original minimum and maximum parole dates for Wilkinson on these offenses were set by the Board at August 17, 1989 and February 17, 1997. (<u>Id</u>.) In fact, Wilkinson was paroled from this sentence on February 8, 1990. (<u>Id</u>., Ex.2.)

Eighteen months later, on November 18, 1991, while he was serving his parole, local police in Cumberland County, Pennsylvania, arrested Wilkinson for new criminal charges involving illegal possession of firearms, receipt of stolen property, and the alleged gun-point rape of a woman. (<u>Id</u>., Ex.3). Based upon this new episode of armed,

2

violent, sexually predatory conduct, the Board lodged a warrant against Wilkinson citing him for parole violations. (Id., Attachment #1 - Declaration of Carol Francavilla.)

Wilkinson was convicted of these state offenses on June 2,1992, when he pleaded guilty to Indecent Assault, and nolo contendere to Receiving Stolen Property and Firearms offenses. (Id., Ex.4.) The Court of Common Pleas of Cumberland County, Pennsylvania sentenced Wilkinson to a total term of three-to-seven years imprisonment for the new state convictions, (Id., Ex. 4), and on June 25, 1992, Wilkinson was returned to a Pennsylvania state custody. (Id., Attachment 1.) For its part, the Parole Board, lodged a warrant against Wilkinson for parole violations as a result of these new convictions on June 26, 1992, and notified Wilkinson in writing of its decision to recommit him as a convicted parole violator. (Id., Ex. 5.)

Wilkinson's armed criminal recidivism also came to the attention of federal authorities who charged Wilkinson on July 16, 1993, with federal firearms offenses. (Id., Ex. 6.) Wilkinson pleaded guilty to these federal offenses, pursuant to the terms of a plea agreement which recommended that Wilkinson's federal sentence run concurrently with the state offenses for Wilkinson's related state crimes. On November 29, 1993, the United States District Court for the Middle District of Pennsylvania accepted Wilkinson's guilty plea and sentenced Wilkinson to serve a

total of 210 months in prison for this firearms offense. (Id., Ex. 7.) The federal court's sentencing order recommended that the federal sentence "run concurrently to both state matters."  (Id., Ex. 7.)

While it appears that the state and federal sentences arising directly out of this November 1991 crime spree were served concurrently, the state Parole Board made a determination that Wilkinson's state parole sentence should not be served concurrently with these other state and federal jail terms. The Parole Board began communicating its judgments in Wilkinson's case to the Petitioner as early as April 21, 1994, when the Board mailed a decision to Wilkinson that rescinded its prior re-parole decision and October 17, 1999 maximum sentence date set forth in its November 18, 1992 decision. Instead, Wilkinson was now notified that he would be recommitted as a convicted parole violator once he was returned to federal custody. (Id., Ex. 8.) On October 18, 1994, Wilkinson was transferred to federal authorities to begin serving his 210 month federal sentence. (Id., Ex.9.)

While in federal custody, Wilkinson sought to challenge this parole action seeking to exercise jurisdiction over him once he completed his federal sentence. Specifically, on August 9, 2004, Wilkinson filed a petition with Pennsylvania's Commonwealth Court alleging that the Board relinquished jurisdiction over him by transferring him to federal custody and could not lodge a detainer against him for his

original sentence. (Id., Exs. 10 and 11.) On June 13, 2005, Commonwealth Court rejected Wilkinson's petition, noting that as a convicted parole violator he was not entitled under state law to run his parole violation sentence concurrently with his federal sentence for this new criminal conduct. (Id., Ex. 13.)

Wilkinson completed service of his federal sentence and was returned to a Pennsylvania state correctional institution on September 17, 2009.(Id., Ex. 9.) Two weeks later, on October 1, 2009, the Board mailed a recalculation decision to Wilkinson that recalculated Wilkinson's maximum release date as December 11, 2015.(Id., Ex. 15.). This Parole Board decision reflected that Wilkinson received 281 days of credit on his original sentence for the period he was incarcerated from October 8, 1992 to July 16, 1993, and concluded that he became available to commence service of his parole violation sentence on September 8, 2009. (Id., Attachment 1.)

The Parole Board, however, did not calculate this parole violation sentence to run concurrently with Wilkinson's federal firearms sentence. The Parole did not follow this course because it concluded state law did not permit it to do so. Specifically, 61 Pa. C.S. § 6138 provided that, with respect to the order of sentences for convicted parole violators:

> If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed shall precede the commencement of the new term imposed in the following cases:

(I) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution.

(ii) If a person is paroled from a county prison and the new sentence imposed upon him is to be served in the same county prison.

(iii) In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

61 Pa. C.S. § 6138(a)(5)

Upon learning of this Parole Board action, on October 15, 2009, Wilkinson filed an administrative appeal with the Board, which challenged these revocation decisions and the Board's October 2009 recalculation decision. (Id., Ex. 16.) On February 19, 2010 the Board dismissed the appeal as untimely to the extent it sought to challenge revocation decisions made in November 18, 1992 and April 21, 1994, and affirmed the October 2009 recalculation decision. (Id., Ex.17.) Despite the fact that the Board's decision turned on its application of state law to Wilkinson's case, Wilkinson never filed an appeal to Commonwealth Court challenging the Board's February 19, 2010 decision.

Instead, on April 2, 2010, Wilkinson filed this petition for writ of habeas corpus. (Doc. 3.) In his petition, Wilkinson challenges the refusal of parole officials to run his parole violation sentence concurrently. Thus, at bottom, Wilkinson's petition

challenged the Parole Board's application of state law in this fashion which resulted in the extension of his parole release date beyond the initial term he anticipated receiving. (Id.) This matter has been fully briefed by the parties, (Docs. 1, 15, and 18) and is now ripe for disposition. Because Wilkinson has not exhausted his state remedies, and because his petition lacks merit, we will deny the petition.

### III. Discussion

### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by Title 28, United States Code, Section 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > **(A)** the applicant has exhausted the remedies available in the courts of the State;
> >
> > . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1). Substantive Standards Governing Section 2254 Petitions.

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States", Section 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to Section 2254 relief, absent a showing that those violations are

so great as to be of a constitutional dimension. See, Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

## (2). Procedural Thresholds for Section 2254 Petitions.

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b)(2). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See, Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002). A petitioner who has failed to properly pursue a claim in state court in accordance with state legal procedures can overcome this procedural bar to habeas relief only by showing either: (1) both a valid cause for the procedural default and actual prejudice as a result of some violation of federal law; see, Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004), or (2) that the failure to review the petitioner's claim will inevitably "result in a fundamental miscarriage of justice". Coleman v. Thompson, 501 U.S. 722, 750 (1991).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not

excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

**B.** **Wilkinson's Petition Must Be Denied Because He Has Failed To Exhaust His State Remedies**

In this case the Parole Board asserts that there are both procedural and substantive obstacles to habeas corpus relief for Wilkinson. At the outset, the Board argues that Wilkinson has failed to meet § 2254's exhaustion requirement. Noting that the Board's October 2009 decision turned on its interpretation of state law, the Parole Board argues that to the extent that Wilkinson wished to challenge the Board's decisions, he had the option of appealing that decision to the Commonwealth Court of Pennsylvania. Citing the availability of state appellate remedies, the Parole Board argues that, by failing to pursue state relief, Wilkinson has also failed to meet § 2254's exhaustion requirement.

It is now well-settled that exhaustion of available state remedies is an absolute prerequisite to filing a federal habeas petition. 28 U.S.C. § 2254(b)(1). As the United States Court of Appeals for the Third Circuit has held "[i]t is axiomatic that a federal habeas court may not grant a petition for writ of habeas corpus . . . unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). As the person seeking to invoke habeas

relief, Wilkinson bears the burden of establishing that he has exhausted state remedies. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). Wilkinson cannot satisfy this burden and will not be deemed to have exhausted his state remedies as long as he had the right under state law to raise the question presented in his habeas petition. 28 U.S.C. § 2254( c ); Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002).

In this case Wilkinson is a criminal recidivist and parole violator who had previously litigated Parole Board rulings to the Commonwealth Court and was, therefore, familiar with the appellate path he could follow in challenging these decisions. See McMahon v. Pennsylvania Board of Probation and Parole, 504 Pa. 240, 470 A.2d 1337 (1983)(recalculation). Yet, it is undisputed that Wilkinson did not pursue a state appeal of this October 2009 recalculation decision. That failure to pursue available state remedies is now fatal to Wilkinson's petition. Since Wilkinson has failed to exhaust his state remedies, his petition should be denied. Indeed, such petitions have routinely been denied in the past where, as in this case, it has been shown that the petitioner who is challenging a parole decision has not exhausted his other remedies before proceeding to federal court. See, e.g., Warwick v. Miner, 257 F. App'x 475 (3d Cir. 2007); Williams v. Winder, 232 F. App'x 177 (3d Cir. 2007); Coady v. Vaughn, 251 F.3d 480 (3d. Cir. 2001).

Given Wilkinson's clear default, this Court cannot review the merits of his procedurally defaulted claims unless Wilkinson shows either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the Court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, Wilkinson must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if the Wilkinson can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993) Here, Wilkinson's petition fails to excuse these defaults because he has offered no good cause or excuse for his failure to follow the proper procedures to challenge the Board's revocation decisions and recalculation orders. Moreover, Wilkinson has not demonstrated the type of fundamental unfairness in the parole board's conduct which would permit a finding of prejudice. Quite the contrary, the Board's actions with respect to this parole violator seem fitting and just in this case.

Nor can Wilkinson avoid this procedural default by claiming that the failure to review the claim will result in a fundamental miscarriage of justice. Edwards v.

<u>Carpenter,</u> 529 U.S. 446, 451 (2000). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496. Here Wilkinson's procedurally flawed petition does not claim that he is actually innocent. Rather, Wilkinson simply disputes the manner in which the Board calculated his parole violation maximum sentence after he was recommitted as a convicted parole violator. Such a claim simply does not amount to the type of profound, compelling miscarriage of justice which would excuse a petitioner's procedural defaults. Therefore, this petition is procedurally barred due to Wilkinson's failure to exhaust his state remedies.

### C. <u>Wilkinson's Petition Fails On Its Merits</u>

#### 1. <u>Wilkinson is Not Entitled to Use a Writ of Habeas Corpus to Compel the Parole Board to Impose its Parole Violator Sentence Concurrently</u>.

In any event, Wilkinson's petition fails on its merits since Wilkinson has not identified state conduct in this case which violates the Constitution or laws or treaties of the United States, and led to a fundamental defect which inherently resulted in a complete miscarriage of justice in a fashion which was completely inconsistent with

rudimentary demands of fair procedure. Fairly construed, Wilkinson's petition raises two issues, neither of which merits habeas relief.

At the outset, in his petition Wilkinson simply challenges the fashion in which the Parole Board recalculated his term of incarceration following his involvement in new crimes. Specifically, Wilkinson protests the Board's decision not to permit the parole violation sentence to run concurrently with the sentences imposed for those new crimes which formed the basis of this parole violation.

State inmates like Wilkinson frequently invite federal courts to revisit discretionary parole determinations by challenging those parole decisions on constitutional grounds. Yet these invitations are rarely embraced by the courts. Thus, federal courts have routinely rejected suggestions by state prisoners that discretionary parole denials offend constitutional due process, and have denied habeas relief to such petitioners. See, e.g., Williams v. Pa. Bd. of Probation and Parole, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); Walls v. Attorney General, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); Zuniga v. Pa. Bd. of Probation and Parole, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); Anderson v. Pa. Bd. of Probation and Parole, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); Bonsall v. Gillis, 372 F.Supp. 2d 805 (M.D. Pa. 2005); Bachman v. Jeffries, 488 F.Supp. 107 (M.D. Pa. 1980).

These cases are grounded upon several basic tenets of constitutional law. At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole). These cases all further recognize that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F.Supp. 288, 294 (E.D. Pa. 1993).Therefore, Wilkinson may not premise his habeas petition on a claim of some constitutional entitlement to parole.

Recognizing this reality, in this case Wilkinson's petition attacks another aspect of the parole process: the fact that, under certain circumstances, state law prohibits parole violating sentences from running concurrently with the sentences imposed for new crimes committed by an offender while on parole. See 61 Pa. C.S. § 6138(a)(5). Thus, at bottom, Wilkinson's petition launches a constitutional challenge to the entire structure of Pennsylvania's parole statute. The difficulty with this claim is that it is well-established that this aspect of Pennsylvania's parole statute is constitutional. See

16

United State ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir. 1970)(rejecting Eighth Amendment and due process claims). Indeed, for more than 50 years federal courts have expressly considered the provision of state law challenged by Wilkinson, which prohibits parole violation sentences from running concurrently with the sentences imposed for new crimes committed by an offender while on parole, and have held that this Parole Board policy does not violate any federal constitutional right of states prisoners. See, e.g., Henderson v. Commonwealth, 287 F.Supp. 372 (W.D.Pa. 1968); Kunkle v. Claudy, 112 F.Supp. 598 (M.D.Pa. 1953). As one court recently observed when rejecting a similar claim:

> Petitioner's claim that the Board refused to allow him to serve his backtime sentence concurrently with his federal sentence alleges violations of state law and, therefore, is not cognizable on federal habeas review. See United States ex rel. Long v. Rundle, 327 F.2d 495, cert. denied, 377 U.S. 957 (1964) (holding that petitioner's claim that he should have been permitted to serve the remainder of the sentence from which he was paroled before serving the sentence imposed for the crime committed while on parole raised no constitutional question). In this regard, there is no inherent constitutional right to concurrent sentences, nor is there a constitutional right regarding which sentence should be served first. See United States v. Dovalina, 711 F.2d 737, 739 & n. 1 (5th Cir.1983) (holding that the Constitution does not create a right to have state and federal sentences run concurrently). Cf. Piercy v. Black, 801 F.2d 1075, 1078-79 (8th Cir.1986) (rejecting full faith and credit clause argument because "one state cannot control the manner in which another state administers its criminal justice system.").

Gibson v. Murray, No. 05-874, 2006 WL 2668528, 3 (W.D.Pa. Sept.14, 2006).

These observations remain as pertinent and compelling today as they were when they were initially made, and continue to rebut any habeas challenge to the parole board's compliance with state law, which refuses to reward parole violators with concurrent time credit when they commit new crimes while on parole.

> **2.** **Wilkinson, a Rapist Who Committed a Gun-Point Sexual Assault While On State Parole, May Not Use a Writ of Habeas Corpus to Set Aside the Parole Board's Determination That He is a Sex Offender**

Finally, to the extent that Wilkinson, a state prisoner, is challenging current Parole Board actions classifying him as sex offender on constitutional ex post facto clause grounds, it is clear that he has only a very limited right to relief in federal court. With respect to this claim, the guiding legal standards can be simply stated:

> The Ex Post Facto Clause states that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. art. I, § 10, cl.1. The Clause applies to a statute or policy change which "alters the definition of criminal conduct or increases the penalty by which a crime is punishable."The ex post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change. To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a "sufficient risk of increasing the measure of punishment attached to the covered crimes"; a "speculative and attenuated possibility of ... increasing the measure of punishment" is not enough.

Richardson v. Pa. Bd. of Probation and Parole 423 F.3d 282, 287-88 (3d. Cir. 2005)(citations omitted). Since proof of an ex post facto violation requires both proof of a change in the law, and evidence that "the offender was disadvantaged by the change," Richardson v. Pa. Bd. of Probation and Parole , 423 F.3d at 287-88, to sustain such a claim Wilkinson must show that some change in the law, retroactively applied to him, created an "individualized disadvantage" for the petitioner in securing parole. Richardson v. Pa. Bd. of Probation and Parole, supra; Yeckel v. Commonwealth of Pennsylvania, No. 05-839, 2006 WL 891461, *4 (W.D. Pa., March 29, 2006).

To meet this burden Wilkinson must make an exacting showing. As the United States Court of Appeals for the Third Circuit has held when rejecting a similar claim by a state inmate who, like Wilkinson, had committed prior violent sex offenses, a petitioner advancing an ex post facto claim must present some evidence that the new law disadvantaged him. As the Court explained "[t]he mere intuition that stricter standards are more likely to lead to an adverse result is insufficient. Rather, [a petitioner] must provide such evidence as indications that he would have been a good candidate for parole under the old law, . . ., and the extent to which the reasons given for denying him parole would not have been considered before [the change in the law.]." Taylor v. Pa. Board of Probation and Parole, 181 F.App'x, 253, 254-255 (3d

Cir. 2006); See Shaffer v. Meyers, 163 Fed. Appx. 111 (3d Cir. 2006). See also Sheffield v. Pa. Department of Corrections, No. 07-2046, 2009 U.S. Dist. LEXIS 5110, at *6 (M.D. Pa. January 26, 2009). Applying these standards, courts have consistently rejected efforts by sexual offenders to use the Constitution's ex post facto clause as a means of challenging parole actions based upon their sex offender status. Pleaze v. Klem, 335 F.App'x 168, 171-72 (3d Cir. 2009); Taylor v. Pa. Board of Probation and Parole, 181 F.App'x, 253, 254-255 (3d Cir. 2006); Barrett v. Bretton, No. 08-117, 2010 WL 330250 (W.D. Pa. Jan. 11, 2010); Sheffield v. Pa. Dep't of Corrections, No. 07-2046, 2009 WL 210490 (M.D. Pa. Jan. 26, 2009); Trivit v. Klem, No. 07-883, 2008 WL 4616800 (M.D. Pa. Oct. 16, 2008); Smythe v. Diguglielmo, No. 05-5869, 2007 WL 2972586 (E.D. Pa. Oct. 10, 2007).

These principles are fully applicable here, and compel denial of this petition for writ of habeas corpus. At the outset, in this case Wilkinson's petition does not allege facts which would permit the Court to conclude that the undeniably accurate description of this serial rapist as a sex offender results in an "individualized disadvantage " for the petitioner in securing parole. In short, Wilkinson has not shown that this sex offender classification amounts to an unconstitutional application of the law to his case. Rather, that classification simply appears to represent the Board's longstanding acknowledgment that offenders like Wilkinson–a rapist who committed

a gun-point sexual assault while on parole for a prior rape–present a constellation of grave risk factors, risk factors that transcend any changes in the law. This sex offender classification decision, therefore, was a careful, informed balancing of the interests of both the inmate and society. Since nothing in this Parole Board classification decision offends constitutional considerations, this petition for writ of habeas corpus should be denied.

**IV**.    **Conclusion**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28, United States Code, § 2254, the Petition is DENIED, and we find that a certificate of appealability should not issue.

<div align="center" style="margin-left:auto;">

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
</div>

Dated: September 23, 2010